

10 CIV 59 99 (GBD)

ECF CASE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBB EVANS & ASSOCIATES LLC, solely in its capacity as Receiver over WG Trading Investors, L.P., WG Trading Company, Limited Partnership, and other entities,

        Plaintiff,

- against –

SUN AMERICA LIFE INSURANCE, an Arizona corporation; AMERICAN INTERNATIONAL GROUP, INC., a Delaware corporation; SUN LIFE ASSURANCE COMPANY OF CANADA (U.S.), a Delaware corporation doing business as SUN LIFE FINANCIAL; BAPTIST HEALTHCARE SYSTEM, INC., a Kentucky corporation; and TRUSTEES OF TUFTS COLLEGE, a Massachusetts corporation,

        Defendants.

---

Civil Action No.:

COMPLAINT FOR:

1.   AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS [N.Y. Debt. & Cred. Law §§ 273, 278 and/or 279]

2.   AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS [N.Y. Debt. & Cred. Law §§ 274, 278 and/or 279]

3.   AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS [N.Y. Debt. & Cred. Law §§ 275, 278 and/or 279}

4.   AVOIDANCE OF INTENTIONAL FRAUDULENT TRANSFERS [N.Y. Debt. & Cred. Law §§ 276, 276-a, 278 and/or 279]

5.   TURNOVER OF RECEIVERSHIP PROPERTY

6.   UNJUST ENRICHMENT/ CONSTRUCTIVE TRUST

---

    Robb Evans & Associates LLC (the "Receiver"), solely in its capacity as the duly appointed Receiver over WG Trading Investors, L.P., WG Trading Company, Limited Partnership, and other entities, hereby brings this complaint and respectfully complains and alleges as follows:

### STATEMENT OF JURISDICTION AND VENUE

    1.    On February 25, 2009, the Receiver was appointed by the Honorable George B. Daniels as the Receiver over WG Trading Investors, L.P. ("WGTI"), WG Trading Company, Limited Partnership ("WGTC"), Westridge Capital Management, Inc. ("Westridge Capital"), and

1

over the assets of Paul Greenwood ("Greenwood"), Stephen Walsh ("Walsh"), Robin Greenwood and Janet Walsh, who are named as defendants or relief defendants in *Securities and Exchange Commission v. WG Trading Investors, L.P. et al,* 09-CV-1750 (the "SEC Action"). A true and correct copy of the order of appointment in the SEC Action is attached hereto as Exhibit 1. The Receiver was made permanent receiver in the SEC Action by an order entered May 26, 2009. A true and correct copy of the order making the Receiver the permanent receiver in the SEC Action is attached hereto as Exhibit 2.

2.      On February 25, 2009, the Receiver was also appointed by the Honorable George B. Daniels as the Receiver over WGTI, Westridge Capital, Greenwood, Walsh, WGIA, LLC, WGTC, Westridge Capital Management Enhancement Funds, Inc., WGI LLC, K&L Investments, and over the assets of Janet Walsh, who are named as defendants or relief defendants in *Commodity Futures Trading Commission v. Stephen Walsh, et al* 09-CV-1749 (the "CFTC Action"). A true and correct copy of the order of appointment in the CFTC Action is attached hereto as Exhibit 3. The Receiver was made permanent receiver in the CFTC Action by an order entered May 26, 2009. A true and correct copy of the order making the Receiver the permanent receiver in the CFTC Action is attached hereto as Exhibit 4.

3.      The orders appointing the Receiver in the SEC Action and the CFTC Action (which are sometimes hereinafter referred to collectively as the "Appointment Orders") provide, among other things, that the Receiver has full power to sue for, collect, receive and take possession of all moneys of the defendants and the relief defendants in the SEC Action and the CFTC Action.

4.      In the SEC Action and the CFTC Action, the Court also granted the Receiver's request for permission to commence litigation on behalf of the receivership estates based on claims such as the ones asserted in this complaint, pursuant to orders entered September 21, 2009. True and correct copies of the orders permitting the Receiver to commence this litigation are attached hereto collectively as Exhibit 5.

5. This Court has supplemental and/or ancillary jurisdiction of the instant action pursuant to 28 U.S.C. sections 1331 and 1367, and applicable federal receivership law.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. section 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this District, and pursuant to 28 U.S.C section 1391(c) in that defendants are subject to personal jurisdiction in this District, as more particularly set forth herein.

## PARTIES

7. The Receiver is informed and believes, and thereon alleges, that defendant Sun America Life Insurance is an Arizona corporation.

8. The Receiver is informed and believes, and thereon alleges, that defendant American International Group, Inc. ("AIG"), is a Delaware corporation. The Receiver is further informed and believes, and thereon alleges, that at the times mentioned herein AIG was the parent of defendant Sun America Life Insurance and was the recipient of certain fraudulent transfers alleged herein for itself and/or for its subsidiary. AIG and defendant Sun America Life Insurance are hereinafter referred to collectively as "Sun America."

9. The Receiver is informed and believes, and thereon alleges, that defendant Sun Life Assurance Company of Canada (U.S.) ("Sun Life") is a Delaware corporation doing business as Sun Life Financial. The Receiver is further informed and believes, and thereon alleges, that Sun Life is the successor in interest to Keyport Life Insurance Company ("Keyport").

10. The Receiver is informed and believes, and thereon alleges, that defendant Baptist Healthcare System, Inc. ("Baptist Healthcare") is a Kentucky corporation.

11. The Receiver is informed and believes, and thereon alleges, that defendant, Trustees of Tufts College ("Tufts"), is a Massachusetts corporation.

12. The Receiver is informed and believes, and thereon alleges, that the Court has personal jurisdiction over defendants Sun America, Sun Life and Tufts because at all relevant

3

times said defendants have done business in the State of New York and have engaged in continuous, regular, and substantial activity in the State of New York.

13. The Receiver is informed and believes, and thereon alleges, that each of the defendants named herein invested money and entered into investment activities directly and/or indirectly with WGTC and/or WGTI (collectively, the "Receivership Entities") and that the investment activities substantially took place in the State of New York. The Receiver is informed and believes, and thereon alleges, that each of the defendants named herein understood that as a result of its investments with the Receivership Entities, substantial investment activities would take place, and in fact did take place, in the State of New York.

14. The Receiver is informed and believes, and thereon alleges, that each of the defendants named herein deposited investment funds into accounts maintained in the State of New York and received substantial payments, including all of the payments which are sought to be recovered by the Receiver in this action, from accounts maintained in the State of New York.

15. In addition to the foregoing bases for personal jurisdiction, the Court has personal jurisdiction over defendant Sun America Life Insurance as a result of the Receiver's compliance with 28 U.S.C. section 754 in the United States District Court for the Central District of California and 28 U.S.C. section 1692.

16. In addition to the foregoing bases for personal jurisdiction, the Court has personal jurisdiction over defendants AIG and Sun Life as a result of the Receiver's compliance with 28 U.S.C. section 754 in the United States District Court for the District of Delaware and 28 U.S.C. section 1692.

17. In addition to the foregoing bases for personal jurisdiction, the Court has personal jurisdiction over defendant Baptist Healthcare as a result of the Receiver's compliance with 28 U.S.C. section 754 in the United States District Court for the District of Kentucky and 28 U.S.C. section 1692.

18. In addition to the foregoing bases for personal jurisdiction, the Court has personal jurisdiction over defendants Tufts and Sun Life as a result of the Receiver's compliance with 28

U.S.C. section 754 in the United States District Court for the District of Massachusetts and 28 U.S.C. section 1692.

## GENERAL ALLEGATIONS

19. WGTC held itself out as an investment company involved in purchasing and selling equities. An investor could purportedly invest with WGTC by becoming a limited partner in WGTC.

20. WGTI held itself out as an investment company that would invest in WGTC through a purported limited partnership interest in WGTC. Most investors could invest in WGTI through the issuance of purported promissory notes payable to the investor, or through various "feeder funds," which were controlled by the same management that controlled the Receivership Entities. These feeder funds were mere conduits for investments in the Receivership Entities. They had no separate business or business purpose other than to facilitate the investment in the Receivership Entities.

21. The Receiver is informed and believes, and thereon alleges, that WGTC and WGTI were financially inseparable and were operated as a single entity for reasons including, but not limited to, the following:

    (a)    All accounting processes and internal controls were performed by the same employee.

    (b)    WGTI received funds from or paid funds to WGTC's investors.

    (c)    WGTC received funds from or paid funds to and for WGTI's investors.

    (d)    WGTC paid improper "employee advances" directly to or for Greenwood and Walsh, and charged the payments as reductions of WGTI's capital in WGTC. Sometimes, WGTI reimbursed WGTC and recorded the payments as "employee advances" and as receivables due from Greenwood and Walsh instead of as increases of its investment in WGTC.

    (e)    WGTI paid improper "employee advances" directly to or for Greenwood and Walsh, and recorded the payments as receivables due from Greenwood and Walsh instead of as increases of WGTI's investment in WGTC.

(f)   Employee advances due from Greenwood and Walsh to WGTI at the end of a year were reclassified as notes receivable due from Greenwood and Walsh in the following year. Employee advances paid by WGTC were charged against WGTI's capital in WGTC but did not reduce any other partner's capital in WGTC and were recorded by WGTI as receivables. WGTC's books therefore did not carry any asset or expense item in connection with its payments to Greenwood and Walsh.

(g)   Payments made by WGTI or WGTC to a director of Westridge Capital totaling approximately $8.9 million from 1998 to 2008 were all expensed to WGTI as professional fees.

(h)   WGTC charged all losses arising from its transactions involving Signal Apparel Company, Inc. ("Signal Apparel") as reductions in WGTI's capital in WGTC. None of the other limited partners of WGTC had any losses attributable to Signal Apparel allocated to them.

(i)   WGTI recorded all of its payments in connection with Signal Apparel as expenses or employee advances instead of as increases of its investment in WGTC.

(j)   WGTI made no entries regarding its transfers of bank interest income to WGTC between 2006 and 2008 while WGTC recorded the receipts from WGTI as income.

(k)   The allocation of income by WGTC to WGTI was different from that of the other limited partners of WGTC. After the actual monthly net income of WGTC was determined, the net income was allocated to each of the other limited partners pursuant to a set formula, and the remainder, whether income or loss, was then allocated, or plugged, to WGTI.

(l)   When WGTC was short of funds, WGTI advanced funds to WGTC.

(m)   When WGTI was short of funds, WGTC advanced funds to WGTI.

22.   The Receiver is informed and believes, and thereon alleges, that the funds of the Receivership Entities were commingled, that the Receivership Entities were operated as a single entity, and that neither company could have continued to operate without the other. The Receiver is informed and believes, and thereon alleges, that Walsh and Greenwood used WGTI

Case 1:10-cv-05999-GBD   Document 1   Filed 08/10/10   Page 7 of 18

to hide their misappropriation of investor funds through, among other things, improper "employee advances" and the losses in connection with the investment in Signal Apparel, because WGTC was subject to regular outside audits and was registered as a broker-dealer under the Securities Exchange Act of 1934 and was a commodity pool as defined in Commodity Futures Trading Commission Regulations. As set forth above, WGTC's books did not carry any asset or expense item in connection with its payments to Greenwood and Walsh and all Signal Apparel losses were charged as reductions in WGTI's capital in WGTC. WGTC used WGTI to carry out its fraudulent investment enterprise.

23. The Receiver is informed and believes, and thereon alleges, that Walsh and Greenwood misappropriated a substantial portion of the investor funds, in excess of $130 million, for their own personal use and to fund their lavish lifestyles.

24. The Receiver is informed and believes, and thereon alleges, that the Receivership Entities lost in excess of $180 million in connection with the investment in Signal Apparel.

25. The Receiver is informed and believes, and thereon alleges, that as a result of, among other things, Walsh and Greenwood's misappropriation of investor funds, in excess of $130 million, and their efforts to hide the substantial losses in Signal Apparel, the Receivership Defendants did not invest all of the money raised from investors that should have been invested.

26. The Receiver is informed and believes, and thereon alleges, that the net income allocated to limited partners of WGTC, other than WGTI, and the net income allocated to the investors in WGTI, was improperly calculated and artificially high.

27. The Receiver is informed and believes, and thereon alleges, that the Receivership Entities were in fact a unitary Ponzi-type fraudulent enterprise. Over a 13-year period commencing in 1996, the Receivership Entities had net earnings of approximately $331 million, but paid out and promised to pay out earnings to its investors approximately $982 million, creating a shortfall of approximately $651 million. The Receiver is informed and believes, and thereon alleges, that the money paid out and promised for payment could not have been paid without raising new investor capital.

7

28. Because of, among other things, Greenwood's and Walsh's diversion of funds, and the Signal Apparel losses, the Receivership Entities did not earn sufficient returns from their investments to pay the investors, did not have assets in excess of their liabilities and should not have paid out millions of dollars to the fully redeemed investors of the Receivership Entities in excess of the amounts which they invested. The Receiver is informed and believes, and thereon alleges, that at all relevant times the Receivership Entities were insolvent.

29. The Receiver is informed and believes, and thereon alleges, that because of the fraudulent nature of the Receivership Entities' Ponzi-type enterprise, and because Greenwood and Walsh actively concealed the fraudulent nature of the enterprise so as to continue to misappropriate a substantial portion of investor funds, the existence of the Excess Payments, as hereinafter defined, constituting fraudulent transfers as alleged herein was not known and could not have been discovered prior to the Receiver's appointment under the Appointment Orders, and was not in fact known to the Receiver until after the Appointment Orders.

30. The Receiver is informed and believes, and thereon alleges, that the remaining investors, who received payments from the Receivership Entities in an aggregate amount less than the principal amount they invested in the Receivership Entities are owed a collective total of not less than $937 million (the investors holding these claims are referred to hereinafter individually and collectively as the "Losing Investors").

31. The Receiver is informed and believes, and thereon alleges, that Sun America was an investor in the Receivership Entities. The Receiver is informed and believes, and thereon alleges, that Sun America made total payments to the Receivership Entities in the sum of $615,700,000 and that Sun America received total payments from the Receivership Entities in the sum of $692,219,520 resulting in payments to Sun America in excess of its investment of $76,519,520 (the "Sun America Excess Payments"). The Receiver is informed and believes, and thereon alleges, that the Sun America Excess Payments were paid within the limitations period applicable to this action. The Receiver is informed and believes, and thereon alleges, that the Receivership Entities did not receive value in exchange for the Sun America Excess Payments.

8

32. The Receiver is informed and believes, and thereon alleges, that Sun Life was an investor in the Receivership Entities. The Receiver is informed and believes, and thereon alleges, that Sun Life made total payments to the Receivership Entities in the sum of $118,000,000 and that it received total payments from the Receivership Entities in the sum of $142,369,748 resulting in payments to Sun Life in excess of its investment of $24,369,748 (the "Sun Life Excess Payments"). The Receiver is informed and believes, and thereon alleges, that the Sun Life Excess Payments were paid within the limitations period applicable to this action. The Receiver is informed and believes, and thereon alleges, that the Receivership Entities did not receive value in exchange for the Sun Life Excess Payments.

33. The Receiver is informed and believes, and thereon alleges, that Baptist Healthcare was an investor in the Receivership Entities. The Receiver is informed and believes, and thereon alleges, that Baptist Healthcare made total payments to the Receivership Entities in the sum of $22,000,000 and that it received total payments from the Receivership Entities in the sum of $26,006,735 resulting in payments to Baptist Healthcare in excess of its investment of $4,006,735 (the "Baptist Healthcare Excess Payments"). The Receiver is informed and believes, and thereon alleges, that the Baptist Healthcare Excess Payments were paid within the limitations period applicable to this action. The Receiver is informed and believes, and thereon alleges, that the Receivership Entities did not receive value in exchange for the Baptist Healthcare Excess Payments.

34. The Receiver is informed and believes, and thereon alleges, that Tufts was an investor in the Receivership Entities. The Receiver is informed and believes, and thereon alleges, that Tufts made total payments to the Receivership Entities in the sum of $36,000,000 and that it received total payments from the Receivership Entities in the sum of $40,145,879 resulting in payments to Tufts in excess of its investment of $4,145,879 (the "Tufts Excess Payments"). The Receiver is informed and believes, and thereon alleges, that the Tufts Excess Payments were paid within the limitations period applicable to this action. The Receiver is

informed and believes, and thereon alleges, that the Receivership Entities did not receive value in exchange for the Tufts Excess Payments.

35. The Sun America Excess Payments, Sun Life Excess Payments, Baptist Healthcare Excess Payments, and Tufts Excess Payments are hereinafter individually and collectively referred to as the "Excess Payments." The Receiver is informed and believes, and thereon alleges, that defendants, and each of them, gave no value in exchange for the Excess Payments and/or did not receive the Excess Payments in good faith.

36. The Receiver is informed and believes and thereon alleges that at the time each of the Excess Payments were made, there were existing creditors of the Receivership Entities, including but not limited to at least some of the Losing Investors, who held matured and unmatured claims against the Receivership Entities, and after each of the Excess Payments were made, there were new creditors of the Receivership Entities, including but not limited to at least some of the Losing Investors, who held matured and unmatured claims against the Receivership Entities.

37. The Receiver is informed and believes, and thereon alleges, that the Excess Payments were paid with proceeds of fraudulently and unlawfully obtained funds in connection with the Receivership Entities' operation of a Ponzi-type investment scheme as hereinabove alleged. All of the amounts comprising the Excess Payments received by defendants, as set forth above, are the rightful property of the receivership estate pursuant to, among other things, the Appointment Orders (Exhibits 1 through 4 hereto) and pursuant to the orders granting the Receiver's request for permission to commence litigation on behalf of the receivership estates based on claims such as the ones asserted herein (Exhibit 5 hereto). The Receiver is authorized to recover the Excess Payments for the benefit of the receivership estate pursuant to said orders and applicable law.

## FIRST CLAIM FOR RELIEF

[Against All Defendants for Avoidance of Constructive Fraudulent Transfers]

[N.Y. Debt. & Cred. Law §§ 273, 278 and/or 279]

38. The Receiver adopts and incorporates by reference the allegations contained in the previous paragraphs 1-37, inclusive, as though set forth in full.

39. The Receiver is informed and believes, and thereon alleges, that each of the Excess Payments were transferred and paid by the Receivership Entities without a fair consideration.

40. The Receiver is informed and believes, and thereon alleges, that the Receivership Entities were insolvent when each of the Excess Payments were made or, in the alternative, the Receivership Entities became insolvent as a result of each of the Excess Payments.

41. By virtue of the foregoing, and pursuant to N.Y. Debt. & Cred. Law §§ 273, 278 and/or 279, the Receiver is entitled to a judgment (a) directing that the Excess Payments be set aside, and (b) recovering the Excess Payments, or the value thereof, for the benefit of the receivership estate from the following defendants:

    i. As to Sun America, the sum of $76,519,520 representing the Sun America Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

    ii. As to Sun Life, the sum of $24,369,748 representing the Sun Life Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

    iii. As to Baptist Healthcare, the sum of $4,006,735 representing the Baptist Healthcare Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   iv. As to Tufts, the sum of $4,145,879 representing the Tufts Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

SECOND CLAIM FOR RELIEF

[Against All Defendants for Avoidance of Constructive Fraudulent Transfers]

[N.Y. Debt. & Cred. Law §§ 274, 278 and/or 279]

  42. The Receiver adopts and incorporates by reference the allegations contained in the previous paragraphs 1-37, inclusive, as though set forth in full.

  43. The Receivership Entities did not receive fair consideration for the Excess Payments.

  44. At the time the Receivership Entities made each of the Excess Payments, the Receivership Entities were engaged in, or were about to engage in, a business or transaction for which the property remaining in their hands after each of the Excess Payments was an unreasonably small capital.

  45. By virtue of the foregoing, and pursuant to N.Y. Debt. & Cred. Law §§ 274, 278 and/or 279, the Receiver is entitled to a judgment (a) directing that the Excess Payments be set aside, and (b) recovering the Excess Payments, or the value thereof, for the benefit of the receivership estate from the following defendants:

   i. As to Sun America, the sum of $76,519,520 representing the Sun America Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   ii. As to Sun Life, the sum of $24,369,748 representing the Sun Life Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   iii. As to Baptist Healthcare, the sum of $4,006,735 representing the Baptist Healthcare Excess Payments, plus interest thereon at the legal rate according to proof until such

payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

    iv. As to Tufts, the sum of $4,145,879 representing the Tufts Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

THIRD CLAIM FOR RELIEF

[Against All Defendants for Avoidance of Constructive Fraudulent Transfers]

[N.Y. Debt. & Cred. Law §§ 275, 278 and/or 279]

  46. The Receiver adopts and incorporates by reference the allegations contained in the previous paragraphs 1-37, inclusive, as though set forth in full.

  47. The Receivership Entities did not receive fair consideration for the Excess Payments.

  48. At the time the Receivership Entities made each of the Excess Payments, the Receivership Entities had incurred, were intending to incur, or believed they would incur, debts beyond their ability to pay them as the debts matured.

  49. By virtue of the foregoing, and pursuant to N.Y. Debt. & Cred. Law §§ 275, 278 and/or 279, the Receiver is entitled to a judgment (a) directing that the Excess Payments be set aside, and (b) recovering the Excess Payments, or the value thereof, for the benefit of the receivership estate from the following defendants:

    i. As to Sun America, the sum of $76,519,520 representing the Sun America Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

    ii. As to Sun Life, the sum of $24,369,748 representing the Sun Life Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

    iii. As to Baptist Healthcare, the sum of $4,006,735 representing the Baptist Healthcare Excess Payments, plus interest thereon at the legal rate according to proof until such

payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

    iv. As to Tufts, the sum of $4,145,879 representing the Tufts Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

FOURTH CLAIM FOR RELIEF

[Against All Defendants for Avoidance of Intentional Fraudulent Transfers]

[N.Y. Debt. & Cred. Law §§ 276, 276-a, 278 and/or 279]

50. The Receiver adopts and incorporates by reference the allegations contained in the previous paragraphs 1-37, inclusive, as though set forth in full.

51. The Receiver is informed and believes, and thereon alleges, that each of the Excess Payments were made by the Receivership Entities with the actual intent to hinder, delay or defraud present and/or future creditors of the Receivership Entities.

52. By virtue of the foregoing, and pursuant to N.Y. Debt. & Cred. Law §§ 276, 276-a, 278 and/or 279, the Receiver is entitled to a judgment (a) directing that the Excess Payments be set aside, (b) recovering the Excess Payments, or the value thereof, and attorneys' fees for the benefit of the receivership estate from the following defendants:

    i. As to Sun America, the sum of $76,519,520 representing the Sun America Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

    ii. As to Sun Life, the sum of $24,369,748 representing the Sun Life Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

    iii. As to Baptist Healthcare, the sum of $4,006,735 representing the Baptist Healthcare Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   iv. As to Tufts, the sum of $4,145,879 representing the Tufts Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

FIFTH CLAIM FOR RELIEF

[Against All Defendants for Turnover of Receivership Property]

  53. The Receiver adopts and incorporates by reference the allegations contained in the previous paragraphs 1-37, inclusive, as though set forth in full.

  54. The Excess Payments received by defendants, and each of them, constitute transfers from the Receivership Entities of ill-gotten gains and the proceeds of illegal and fraudulent investments solicited by the Receivership Entities.

  55. The Excess Payments received by defendants, and each of them, as alleged above constitute property of the receivership estate.

  56. There is now due and owing from each of the following defendants the following sums:

   i. As to Sun America, the sum of $76,519,520 representing the Sun America Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   ii. As to Sun Life, the sum of $24,369,748 representing the Sun Life Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   iii. As to Baptist Healthcare, the sum of $4,006,735 representing the Baptist Healthcare Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   iv. As to Tufts, the sum of $4,145,879 representing the Tufts Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

SIXTH CLAIM FOR RELIEF

[Against All Defendants for Unjust Enrichment/Constructive Trust]

  57. The Receiver adopts and incorporates by reference the allegations contained in the previous paragraphs 1-37, inclusive, as though set forth in full.

  58. The Receiver is informed and believes, and thereon alleges, that prior to the commencement of the receivership, the defendants, and each of them, received the Excess Payments from the Receivership Entities, the source of which was funds paid by other investors, including the Losing Investors.

  59. The Receiver is entitled to the imposition of a constructive trust by which each of the following defendants holds, as a constructive trustee, the following sums constituting ill-gotten gains and the proceeds of illegal and fraudulent investments solicited by the Receivership Entities and paid by the Receivership Entities to such defendants, and each of them, which rightfully belong to the receivership estate for the benefit of the receivership estate, including the Losing Investors:

   i. As to Sun America, the sum of $76,519,520 representing the Sun America Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   ii. As to Sun Life, the sum of $24,369,748 representing the Sun Life Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   iii. As to Baptist Healthcare, the sum of $4,006,735 representing the Baptist Healthcare Excess Payments, plus interest thereon at the legal rate according to proof until such

payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   iv. As to Tufts, the sum of $4,145,879 representing the Tufts Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

 WHEREFORE, the Receiver prays for a judgment against Defendants, and each of them, as follows:

  1. For judgment for recovery of the following sums against the following defendants:

   a. As to Sun America, the sum of $76,519,520 representing the Sun America Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   b. As to Sun Life, the sum of $24,369,748 representing the Sun Life Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   c. As to Baptist Healthcare, the sum of $4,006,735 representing the Baptist Healthcare Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

   d. As to Tufts, the sum of $4,145,879 representing the Tufts Excess Payments, plus interest thereon at the legal rate according to proof until such payments or transfers are repaid to the Receiver in full or entry of judgment, whichever occurs first.

  2. For attorneys' fees under the Fourth Claim for Relief.

3. For costs of suit incurred by the Receiver, and

4. For such and other and further relief as is just and proper.

Dated: August 9, 2010                MCKENNA LONG & ALDRIDGE LLP

By: _____
Christopher F. Graham, Esq.
Alan F. Kaufman, Esq.
230 Park Avenue, Suite 1700
New York, New York 10169
Tel.: (212) 922-1800
Fax: (212) 922-1819
*Counsel for Receiver*
*Robb Evans & Associates LLC*

-and-

Gary Owen Caris, Esq.
Lesley Anne Hawes, Esq.
MCKENNA LONG & ALDRIDGE LLP
300 South Grand Avenue, 14th Floor
Los Angeles, California 90071-3124
Tel: (213) 688-1000
Fax: (213) 243-6330
*Co-Counsel for Receiver*
*Robb Evans & Associates LLC*

Thomas S. Arthur, Esq.
Craig A. Welin, Esq.
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90048
Tel.: (323) 852-1000
Fax: (323) 651-2577
*Co-Counsel for Receiver*
*Robb Evans & Associates LLC*